By the Court. Hoffman, J.
Prior to the 11th of August, 1852, the plaintiff had deposited with the defendant the sum of $3,600, for the purpose of investing the same in stocks.
On that day the plaintiff wrote to the defendant, instructing him that when he could buy Erie R. R. shares at 70 or 71, he would be glad to have him take all he was willing to carry, with the “ margin” left in his hands by R. Talcott, for his (plaintiff’s) account, say $3,600.
This was answered on the 13th of August, suggesting some objections to the purchase, on the terms and prices named.
On the 26th of August, the plaintiff wrote that the news re *58 ceived here (Skaneatlas) did not seem to promise very well for Parker Vein at 17½. If you in Wall street feel impressed the same way, I shall be glad to have you take two hundred shares Parker Vein for me at once, at the lowest market offered..
August 27th, the defendant replied, that he thought it best to hold back; that Parker Vein was up to 18J a 18£.
On the 2d of September, the plaintiff writes, that he was still inclined to take Parker Vein at the lowest market offered; if it can be taken below cash figure by giving seller option of ten or fifteen days, would do so. “Whatever excess it may cost over and above my deposit in your hands, I shall very probably be glad to have you carry till sold again, if you raise no objection.”
The defendant answered on the 3d of September, that the favor of the 2d was received, and he bought for him 100 Parker Vein 19-J-, of Clerke & Co., and 50 Parker Vein 19% of H. R. Parker. That he should probably get the other 50 on Monday.
On the 5th of September (Monday), he writes that he had bought 50 Parker at 19%, making 200 shares, for which I charge you at 19%, $3,900, brokerage $50, $3950.
In a letter of the 28th of September, the plaintiff says: If you will consider my Parker Vein stock in your hands sufficient margin, I shall be glad to have you take for me 150 or 200 shares of Cumberland Coal, buyer 60 days.”
On the 29th of September the defendant replied that he had bought 100 Cumberland at 38f, buyer 60 days, and would close up the other 100 to-morrow. On the 30th he writes, that in consequence of bad news, he had deferred purchasing the balance of Cumberland. By a letter of the 1st of October, the plaintiff leaves this purchase to the discretion of the defendant; and by another of the 4th of October, he informs the plaintiff that he had done nothing further for him, as money was stringent, and stocks could not go up.
On the 23d of November, the plaintiff proposes an arrangement to the defendant for the latter’s carrying his stocks, and speaks of his 60 days (on Cumberland purchase) as being ndarly expired. The defendant, on the 25th of November, declines the arrangement, and states, that the 100 Cumberland will be due on Monday, “ when I am to sell it at current rates as I understand.” On the 28th of November, he apprises the plaintiff of a sale of *59 the 100 Cumberland, and incloses an account showing a balance due him of $413.50 on this transaction, which the plaintiff remits on the 2d of December, and in his letter of that date, says: “Can you advise me with regard to Parker Vein; is there any probability of its ever being worth what it cost me ?” In reply, the defendant, under date of the 3d of December, says: “ There appears to be a general impression that Parker Vein has little intrinsic merit. . . It is one of those uncertain fancies that may take a sudden turn upward one of these days.”
The testimony is explicit that the several purchases of Parker Vein stock were actually made, and paid for by the defendant, and transfers were made to him in the books of the company. It is also in. evidence that the stocks held by defendant for others, and among them these parcels of Parker Vein were transferred by him to clerks, who gave him a power of attorney to cover them, and always treated them as belonging to him and under his control. It is also proven that the lowest number of shares which stood in the names of the two clerks, and of the defendant from the 4th of September, 1853, to the closing of the books, was 240 shares. Usually the amount was much greater. There was no time when the defendant could not have transferred to the plaintiff 200 shares of such stock.
On the 13th of June, 1854, the defendant enclosed his account current as to the Parker Vein stock and the Cumberland stock, to the plaintiff, showing a balance due of $349.76. The account as to the Parker Vein alone shows a balance of $349.81. On the 15th of June, the plaintiff remits that balance, and asks that his certificates of the stock be sent to him. On the 17th of June, the defendant enclosed two certificates for 100 shares, each Nos. 4080 and 4103, given to D. H. Westerfield, one of the clerks before-mentioned, with a regular power of attorney in favor of the plaintiff attached to each. The certificates were dated May 18th and 20th, 1854.
On the 19th of July, 1854, the plaintiff apprises the defendant that he considered the certificates of May, 1854, as not representing his stock which should have been standing in his name in September, 1853. The defendant answers on the 20th of July, that the stock was bought for him, and paid for on the 5th and 6th of September, and transferred to him; that as he had not paid *60 in full, I held the stock in my name, or, rather, that of my clerk, and he held it along with stock bought for other customers without taking certificates.
The plaintiff, on the 28th of July, 1854, writes that he returns the certificates, and states the position he has taken, which is the ground of the present suit. He insists, that he was entitled to a legal title to 200 shares of the stock vested in him at the time, and evidenced by certificates then legally issued to him.
The testimony also establishes a custom among brokers, that when they are requested to convey stock bought by them for customers, if the stock is not paid for, they deal with it as they think proper, and respond in an equal amount when called upon. If it is paid for, they keep it on hand in their own name, or under their control. If there was a deposit, it would depend how close the amount came to the price, whether they would do with it as they pleased, or hold it specifically. There was no fixed rule.
From this statement of the facts of the case, it is apparent that the plaintiff had no intention, in purchasing the stock in question, of making an investment and becoming a stockholder. It was a naked stock speculation upon the chance of profit by a rise of the market. He has characterized it himself in his letter of the 23d of November, 1853, stating that “his gambling so far had not been productive of very good results.” With notice given on the 5th of September of the purchase on his account of the two-hundred shares and the prices, he treats them on the 28th of September as property in the defendant’s hands, telling him that if he considered the stock a sufficient' margin, to purchase Cumberland Coal stock for him. On the 2d of December, 1853, he asks for advice as to'its disposition; and thus he allows it to rest until June, 1854, when the explosion of the company, and the transmission of the certificates open to his view the scheme of saving himself at the expense of his agent.
Hnder such circumstances, it appears to us that the plaintiff placed himself under the law and custom of brokers, and was chargeable with knowledge of what that usage was, and intended to be bound by it. Indeed, his familiarity with the language of the profession warrants the belief that he actually knew it. It would be gross injustice to allow him now to reject it.
Unless, then, the decided cases expressly require a different con *61 elusion, we cannot hesitate in denying to the plaintiff the relief he seeks.
The case of Nourse v. Prime (4 John. Ch. Rep. 490; 7 id. 69) appears to us so applicable to the present, that it must determine it, unless it has been impaired as an authority by other cases. The shares had been transferred to the defendants, and were then agreed to be held as collateral security, and were mingled with the other stock of the defendants, without certificates taken out; at all times they had in their names an amount equal to those deposited. The case of Allen v. Dykers, (3 Hill, 593, and 7 Hill, 497,) in fact affirms the principle of Nourse v. Prime. The stock was pledged under an express agreement, contained in the stock note, to sell the same in case the note was not paid at maturity. There was no right to sell before. The amount was two hundred and fifty shares. It was carried to the broker’s name on the books, where it stood in common with other stock of his. He transferred all that he had, except seventy-two shares, before the note matured; and after-wards sold the seventy-two shares at a much less price, and applied the proceeds on the note. It was held, that he was responsible for the highest price at which he had sold stock during the running of the note for all the shares except the seventy-two, and his sale of these was ratified. Thus, they were held to be the shares of the plaintiff, although wholly undistinguished, and were so held upon the doctrine of Nourse v. Prime.
The court expressly distinguish the case before it on the ground that, in Nourse v. Prime, the party had, at all times, sufficient stock under his control to enable bim to replace the deposited shares.
With respect to the question of the admissibility of evidence as to the custom of brokers, as to which an exception was taken at the trial, in Allen v. Dykers it was ruled out expressly on the ground that it would be in direct contradiction to the fair and legal import of a written contract. But the Chief-Justice says, “ it may not be necessary to determine what effect would be due to such proof, in the case of a simple pledge as collateral security, without any further agreement. Possibly the known usage, in like cases, might be considered as attaching itself to the transaction, and constituting a part of it.”
In the court of errors (7 Hill, 497) the expressions of Chancellor *62 "Walworth and of Senator Wright, although somewhat more general, place the inadmissibility of the evidence on substantially the same ground: it would contradict the written agreement. Perhaps they meant to be understood, that the usage should not be allowed to control the general law in the case of a mere pledge as security, without an agreement. But this may properly be limited to such a case as the one before them, where there was a loan to be repaid in a definite period and security deposited.
It is not essential whether this evidence is admissible or not, although our impressions are it was so. The case can be decided against the plaintiff without such evidence. There was nothing in the relation of the parties requiring that certificates should be taken out identifying the stock, and retained, subject to the plaintiff’s order, upon his paying the balance. The defendants were only bound to have enough of the stock on hand to make an immediate transfer, on demand. There was no such agreement as in Allen v. Dykers, making the right to sell dependent upon the failure to pay; or which, in the language of Senator Wright, “expressly prohibited the sale of the stock before the time limited for payment of the money.” The whole object and intention was, that the defendant should purchase the stock, should hold it, and should sell it. A transfer to the plaintiff was not, then, contemplated.
It has been urged, that without the taking of certificates, and their identification, the plaintiff would have been subject to the loss of his stock; in case of death or bankruptcy, it would have gone into the general mass of his estate.
It might be sufficient to say, that he assumed this risk when he entered into the transaction; but, in the case as presented, it would not exist. There being stock enough held by the defendant to answer this, and all similar demands, there can be little doubt that it would be selected from the mass of the estate, and appropriated to the use of those for whose account, and with whose funds, it had been purchased.
We consider that the dismissal of the complaint was right, and judgment must be entered accordingly.