## PECKHAM a. KETCHUM.

*New York Superior Court, General Term, January,* 1860.

BROKER.—LIABILITY FOR GENUINENESS OF STOCK.

A broker who, being employed to purchase stock, in good faith and in accordance with the custom of the market, makes the purchase in his own name and transfers the stock bought to his principal, is not liable to the principal if the stock prove to be spurious.

This was an action to recover from the defendants the price paid by the plaintiff for what purported to be ten shares of the stock of the New York and New Haven Railroad Company.

The plaintiff employed the defendants as brokers to purchase for him ten shares of that stock.

The defendants purchased what was passing in the market as the genuine stock. It was transferred to them in their own name, on the books of the company, by the seller, and credited to them by the transfer agent. After this transfer, the plaintiff paid them the price of the stock, and their commission, and they paid the seller, and transferred the ten shares to the plaintiff. Afterwards it turned out that the seller had no title to ten shares of genuine stock, and that the ten which were transferred originated in the overissue by Schuyler.

The plaintiff contended that the defendants, by purchasing in their own names, had made the stock their own, and had become liable to him as if they were principals in the transaction.

*Mr. Jenness,* for the plaintiff.

*Mr. Bangs,* for defendants.

BY THE COURT.—HOFFMAN, J.—The plaintiff applied to the defendants to purchase from them ten shares of the stock in question. Being informed that they had none to sell, the plaintiff then distinctly employed them, as brokers, to purchase for him that amount of shares.

The contract between the plaintiff and defendants therefore was, that they were to buy the stock from some third party, for his account. He gave them the money to fulfil this contract, and they, in effect, paid that money to the seller of the stock.

The plaintiff dealt with the defendants as stock-brokers, and was bound by those customs which prevailed in relation to that species of business. (Horton *a.* Morgan, 6 *Duer*, 56; affirmed on appeal, 13 *N. Y. R.*, 170.) The court above say: "The practice of stock boards by which the brokers only, and not their customers, are known in their dealings with each other, was not unreasonable; and the plaintiff, by directing this purchase to be made, must be understood as consenting that it should be done in the usual manner." The case before us states, that in making such purchase and in causing or permitting the ten shares to be transferred to them, before calling upon plaintiff to pay, and in receiving said check from the plaintiff, Ketchum, Rogers & Bennet acted in the mode usual and customary among stock-brokers in the city of New York, among whom it was not usual or customary to disclose the names of their principals to persons with whom they dealt.

This is sufficient to establish a special custom, although it is in proof also, that some brokers make use of what is called "Purchase Notes," in which the purchaser's and seller's names are inserted.

This custom, then, of which the plaintiff is assumed to have had legal notice, puts him, I think, in the same position as in case of a contract made distinctly with one as agent of a known or disclosed principal. (Rathbone *a.* Budlong, 15 *Johns.*, 1; Mauri *a.* Heffernan, 13 *Ib.*, 57; Exparte Haiti Rep., 12 *Ves.*, 352; Lewis *a.* Nicholson, 18 *Queen's Bench R.*, 503.)

The leading case of Westropp *a.* Solomon (8 *Common Bench R.*, 343), cited by the plaintiff's counsel, appears to me hostile to his claim. The plaintiffs were brokers, and were employed by the defendant to sell certain scrip, which turned out to be invalid. The certificates were such as to deceive everybody who dealt with them. There was no fraud or negligence on either side. Still they were invalid. The brokers paid the purchase money back to the vendees, as also a certain sum which, under the rules of the Stock Exchange, had been prescribed to be paid on purchases. They then sued their principal, who paid

into court the purchase-money, but contested as to the additional sum. The defence was sustained.

The court say: "It seems to be agreed that where a principal employs an agent, the former is bound to indemnify the latter in respect of all payments which may be made by him in the due course of his employment. The agent may recover moneys so paid under a special account stating a promise to indemnify, or under account of money paid. The vendees were entitled to recover back the money paid for the stock.

I do not think that the employment of the defendants in this case can justly be treated as an employment to purchase genuine stock to the extent and import of making them guarantors of the validity of that which they should purchase. It was merely to purchase what in the market was passing as stock of this description. (Lamert *a.* Heath, 15 *M. & W.*, 486.) Then the rule of indemnity to the agent, when the principal is a seller, involves the exemption from responsibility of the agent when, under similar circumstances, the principal is the purchaser. Again, an agent employed to purchase a commodity of a particular character or quality is bound to use all the circumspection and diligence which a prudent purchaser himself would exercise. The nature of the article, the opportunity of detecting the defect or inferiority with proper diligence, are elements in every case of this description. (Mainwaring *a.* Brandon, 6 *Taunton*, 202; Van Allen *a.* Vanderpool, 6 *Johns.*, 69; Liotard *a.* Graves, 3 *Caines' R.*, 226.

Judgment for defendant with costs.